**SO ORDERED.**

**SIGNED July 03, 2006.**

_Henley C. Hunter_
_____
**HENLEY A. HUNTER**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

IN RE:                                                    CASE NO: 06-80051

      BRITISH AMERICAN PROPERTIES, LLC.

## REASONS FOR DECISION

This matter comes before the Court on the application of British American Properties, LLC, to authorize the Retention and Employment of General Capital Partners, LLC, as financial advisor to the Debtor-in-Possession. Hibernia National Bank, now Capital One, filed an objection to the application. This Court has jurisdiction pursuant to 28 U.S.C. 157(b)(2)(A), (F), (K) and (M) and by reference from the District Court pursuant to Local Bankruptcy Rule 9029-3, incorporating Uniform District Court Rule 83.4. This Court makes the following findings of fact and conclusions of law pursuant to F.R.B.P. 7052. Pursuant to these reasons, the application is approved and the objection is overruled.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Debtor, British American Properties, LLC, filed a voluntary petition under Chapter 11 on

January 21, 2006. Debtor is the owner and operator of a hotel and conference center located in Alexandria, Louisiana. On June 7, 2006, debtor-in-possession filed an Application to authorize the retention and employment of General Capital Partners, LLC, ("GCP") as financial advisor, asserting that GCP is an experienced financial advisor that has been hired by numerous clients to facilitate sales in complex situations. GCP consists of professionals experienced in "distressed transaction experience." The application proposes to pay GCP a fee of $7,500.00 a month, capped at $45,000.00, which shall be deemed an administrative expense subject to court approval upon the completion of a sale or financing transaction, dismissal of the case, conversion to a Chapter 7 case, or any other event whereby administrative claims shall be paid. The applicant seeks *nunc pro tunc* approval to June 7, 2006, due to the lack of available hearing dates in June, and seeks to have all of GCP's fees protected by a carve out from any secured collateral of the debtor.[1] Capital One filed an objection, asserting solely that its loan should be paid in full prior to any payment to GCP.

A hearing was held on June 28, 2006. Mr. Greg Drumm testified on behalf of the applicant that GCP is handling about 15 cases in courts throughout the United States. He negotiated the agreement with the debtor. On the latter's behalf, the firm has already begun the solicitation of interested parties for take-out financing. Two confidential agreement had been signed on the evening prior to the hearing. Mr. Edwin W. Leslie, the Trustee of the Leslie Family Trust, the managing partner of the Debtor/LLC. Mr. Leslie testified that he was unable to obtain a traditional loan to the debtor after applying to nine banks, opining that traditional lenders will not loan to debtors-in-possession in bankruptcy cases. He testified that the services of GCP are needed due to that entity's access to non-

---

[1]The objection does not raise any issue related to the *nunc pro tunc* approval. The applicant has correctly noted that the only date available for the hearing was June 28, 2006.

traditional lenders. Further, he testified that he had contacted others specializing in this type financing, but the arrangement with GCP was most favorable to the Debtor.

At the conclusion of the hearing, the parties were directed to furnish the Court with authorities on which they rely prior to 5:00 P.M. in June 28, 2006. Counsel to the Debtor provided the Court with a letter citing 11 U.S.C. §364(d) as authorization for providing a senior lien on the property owned by the debtor and on which Capital One holds a first ranking mortgage. Counsel also reported he found no reported cases from the United States Court of Appeal on point but noted that the case of *In re Four Seas Center, Ltd.,* 754 F.2d 1416 (9th Cir. 1985), which dismissed an appeal of an order authorizing the imposition of a senior lien on collateral because it was not a final order, did note that the imposition of the senior lien was proper under the circumstances of the case. [2]

No submission of authorities was submitted by Counsel to Capital One. At the hearing, counsel argued that the granting of the lien would effectively dismember its collateral. Capital One filed a proof of claim in the amount of $6,227,566.26 secured by debtor's real estate. However, a consent order regarding the use of cash collateral suggest that Capital One has a lien on debtor's accounts receivable, leases and rents, and cash in bank accounts. *(See Consent Order Regarding Cash Collateral and Adequate Protection,* dated June 23, 2006.) This Order recognizes that Hibernia has a enforceable and automatically perfected replacement lien and security interest in all such collateral, but the lien and security interest shall not have priority over, and shall be subordinate and junior to, payment of all post-petition expenses of operation in the ordinary course of business and to other

---

[2]The Court noted that services of an attorney during the pendency of a bankruptcy case are administrative expenses under 11 U.S.C. §503(b)(2). The senior lien was encumbered by a lien on the the objecting creditor's collateral, but the amount of a portion of the lien depended on the outcome of litigation which had not been concluded.

3

expenditures outside the ordinary courts of business as may be authorized by this Court prior to the entry of the Final Order. (Emphasis supplied.) The Order provides that the debtor shall file a plan and disclosure statement no later than September 10, 2006, and debtor shall pay Capital One in full prior to such date or the stay shall lift as to its collateral.[3]

At the outset, it appears that the June 23, 2006, order contemplated that the debtor might incur expenses outside the ordinary course of business, subject to the approval of this Court, and that it intended to pursue take-out financing. It is disingenuous to suggest that this might occur without some exposure to Capital One. Further, the parties have not introduced any evidence as to the value of the collateral.

"Carve out" arrangements are scarcely unusual. The district court affirmed a "carve out" arrangement, noting that the bankruptcy court noted in its findings that such provisions are "a normal and enforceable provision in a cash collateral stipulation." *In re: Lil' Things, Inc.*, 243 B.R. 278 (N.D. Texas 2000). Although the district court there found that the bankruptcy court has not interpreted the carve out arrangement in accordance with the DIP orders, nothing in the decision militates against the use of such arrangements.

Debtors must, however, satisfy the requirements of establishing that the terms of the proposed employment are reasonable. *In re: High Voltage Engineering Corporation,* 311 B.R. 320 (Bankr. D.Mass 2004). It can scarcely be said that Capital One could not have anticipated the need for

---

[3]The reference to the "Final Order" is unclear. It may relate to an order pursuant to the agreement or stipulation of the parties at the May 24, 2006, hearing. The order further requires debtor to furnish Capital One with detailed monthly operating reports and to furnish Capital One periodic reports of its efforts to secure post-petition financing. The reference to the "Final Order" might also relate to another cash collateral order. If Capital One exercises its right under the consent order, the employment of GCP would terminate prior to the expiration of the term set forth in the application.

4

professional assistance.   Here, Capital One has raised no objection to the qualifications of the applicant nor to the necessity of the employment.   In short, the reasonableness requirement of 11 USC §328(a). As the Court noted, citing the Fifth Circuit holding in *In re Barron*, 325 FG.3d 690 (5th Cir. 2003), professionals may be unwilling to work for bankruptcy estates if their services were subject to the uncertainty of a judge reevaluating the work after it is done.   Thus, when a fee arrangement containing a carve out is approved under §328, the power of the court to review the amount is circumscribed. That the debtor here may not file a plan and disclosure statement or may otherwise default on its duties as a debtor-in-possession or breach the terms of the stipulation and Order dated June 23, 2006, are easily anticipated.   On the other hand, the services of GCP may be successful in obtaining the sale of the debtor's business and/or take-out financing sufficient to pay the lien of Capital One.[4]

## CONCLUSION

In short, this Court finds that the debtor-in-possession has satisfied the requirements of 11 U.S.C. §327, 328, 330 and 364(d).   The application is approved and the objection of Capital One is overruled.

Counsel to the debtor-in-possession is **DIRECTED** to submit a separate and conforming Order forthwith, which shall be effective as of the date of these Reasons.

# # #

---

[4]This Court is unaware of, and the parties have not referred it to, any stipulation of the value of Capital One's collateral.

5